MR. JUSTICE SHEEHY,
dissenting:
I dissent. The majority opinion leaves the Noonans bereft and gelded of their just verdict which arose from the unjust actions of the Bank.
The evidence heard by the jury was not cast in the form reported by the majority opinion. Instead the jury heard of business perfidy which the Bank could not deny and on which the jury based a necessarily substantial verdict.
The Noonan’s were a respected business family in Butte. They had limited education, they were not country club folk, but they were hard working and industrious. The Bank’s representative, Dwyer, saw their potential, and sought to obtain all of their banking business. It was through the Bank’s agent that loans were originally made, without the requirement of financial statements or other financial data, and against the Bank’s own protocol. Expansions of buildings and operations were counseled by the Bank and the promise was both expressed and implied that the money needed for their expanding operations would be supplied by the Bank.
When the Noonan’s obtained loans, they signed whatever security agreements were required by the Bank and it is undisputed in this case that for the loans given, the Bank had a first position with respect to the assets and collateral which the Bank had required in making the loans.
The president of the Bank became furious when he learned that the Noonans had been borrowing money from other banks. On March 31, 1982, the Bank gave notice of default to the Noonans, based on the opinion of the Bank that the financial conditions and affairs of the borrower impaired the Bank’s security, increased its risk, and that the Bank deemed itself insecure. When the notice was given, the Noonans had faithfully made the payments which were due to Bank. They were not in default as to any payment and the Bank had a first position with respect to the collateral which it had demanded. Nonetheless the Bank after March 31, 1982, stopped all payments out of Noonans’ checking account with the Bank, seized *338 $70,000 in certificates of deposit which the Noonans had put up for collateral, and obdurately refused to cooperate to keep the Noonans in business. The Noonans were forced into bankruptcy. Thus did the Noonans lose the business which had been operated by their family for over 40 years.
That in brief was the factual background which led this jury, acting responsibly, to award the Noonans $800,000 for loss of profits, wages, business opportunities, and credit, and $700,000 for emotional distress.
The reversal of the judgment in this case on the ground of Instruction No. 24 is terribly unfair. The majority have disregarded the fact that this case was tried under the standards of good faith enunciated in the Uniform Commercial Code. Here the majority strikes Instruction No. 24 because “the minimum requirement for the tortious breach of the covenant of good faith and fair dealing is actions by the defendant which are arbitrarily, capricious, or unreasonable, and exceeded plaintiffs justifiable expectation.” That statement finds its origin in Nicholson v. United Pacific Insurance Company (Mont. 1985), [219 Mont. 32,] 710 P.2d 1342, 42 St.Rep. 1822.
Instructions based on Nicholson would be out of place in a trial of this case. The Noonans’ transactions with the Bank were evidenced by commercial paper. As such, the instruments were covered by the Uniform Commercial Code. Section 30-3-101, et. seq. MCA. Under the Uniform Commercial Code, there is a statutory, as distinguished from a common law obligation of good faith. Section 30-1-203, MCA, provides that:
“Every contract or duty within this code imposes an obligation of good faith in its performance or enforcement.”
Furthermore, under the Uniform Commercial Code, good faith is defined as “honesty in fact in the conduct or transaction concerned.” Section 30-1-201(19), MCA.
The District Court in this case regarded the provisions of the Uniform Commercial Code, and instructed the jury accordingly.
This theory of recovery was acceded to by the Bank, because the instructions offered by the Bank and given by the court parallel Instruction No. 24. Those instructions offered by the Bank were court instructions No. 19 and 26. We set them out as follows:
“INSTRUCTION NO. 19
“You are instructed that both parties in a commercial relationship, *339 such as existed between plaintiffs and defendant in this case, have the duty to deal fairly and in good faith with each other. Good faith is defined as meaning honesty in fact and observance of reasonable standards of fair dealing in the trade.
“Therefore in. this case, if you find that defendant did some dishonest act that harmed the plaintiffs; or that Defendant failed to observe reasonable standards of fair dealing in the transactions with plaintiff, then defendant acted in bad faith and is liable to the plaintiffs for any damages proximately caused thereby.
“Conversely, if you find that defendant did not act in a dishonest manner or fail to observe reasonable standards of fair dealing in its transactions with plaintiffs, then defendant did not act in bad faith and is not liable to the plaintiffs for any losses or damages claimed.”
“INSTRUCTION NO. 26
“You are instructed that a term in a promissory note or security agreement providing that the lender may accelerate payment or performance ‘at will’ or ‘when he deems himself insecure’, or in words of similar import, mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired.
“The burden of establishing lack of good faith is on the party against whom the power has been exercised, the plaintiffs, in this case.”
There is not a dime’s worth of difference between the instructions offered in this case by the Bank and Instruction No. 24 which this Court uses to reverse the plaintiffs’ verdict.
The majority has failed to distinguish that McGregor v. Mommer (Mont. 1986), [220 Mont. 98 ] 714 P.2d 536, 43 St.Rep. 206 was a common law implied covenant of good faith action to which the Nicholson definition applied from this action based on commercial paper, to which the Uniform Commercial Code applies. The instructions in this case were proper.
Finally, the majority have misinterpreted McGregor v. Mommer, supra, as to the impact of Instruction No. 20 on emotional distress.
In McGregor, the use of the word “must” in the instruction was held improper because damages for emotional distress are a tort remedy, and the jury in McGregor may have misinterpreted the instruction as applying to recovery on a contract claim. 714 P.2d at 544.. The language of Instruction No. 24 is not improper in this tort *340 claim, because the language is conditioned first, on finding for the plaintiff on tort and secondly, that the emotional distress is a result of the defendant’s conduct. The decision of the majority to reverse the emotional distress award seems to be based on insufficiency of the evidence to support the award which of course we should leave to the jury. It can be charitably said that the majority see no adverse emotional impact on the Noonans who saw their family business that had been 40 years abuilding crumble and disappear through the unfair conduct of the Bank.
MR. JUSTICE HUNT, joins in the foregoing dissent of MR. JUSTICE SHEEHY.